IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| TERRY C. ANDERSON, | ) | |
| | ) | Case No. CV04-104-S-BLW |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| JOHN HARDISON; ELLIOTT WEISS, BERT | ) | |
| SCHWEICKART, MICHELE SLAY, TOM | ) | |
| GILLESPIE, and GLORIA COUNSIL, | ) | |
| individually and in their official capacities, | ) | |
| | ) | |
| Defendants. | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

Pending before the Court are several motions filed by Plaintiff.  Having reviewed

the motions, responses, and record in this matter, the Court enters the following Order.

**I.**

**PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**

Plaintiff has requested that the Court enter a temporary restraining order in this

case and order a criminal investigation (Docket No. 46).  A temporary restraining order or

preliminary injunction may be granted if the moving party satisfies either the "traditional

standard" or the "alternative standard" of law.  *International Jensen, Inc. v. Metrosound*

*U.S.A., Inc*., 4 F.3d 819, 822 (9th Cir. 1993). The traditional standard requires a

demonstration of the following elements: (1) that the moving party will suffer irreparable

injury if the relief is denied; (2) that the moving party will probably prevail on the merits;

**ORDER  1**

(3) that the balance of potential harm favors the moving party; and (4) that the public interest favors granting relief. *Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987). Under the alternative standard, the moving party may meet its burden by demonstrating either: (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. *Benda v. Grand Lodge of Internat'l. Ass'n. of Machinists & Aerospace Workers*, 584 F.2d 308, 315 (9th Cir. 1978), *cert. dismissed*, 441 U.S. 937 (1979). An irreparable injury is defined as an actual and concrete harm, or the imminent threat of an actual and concrete harm. *Los Angeles Memorial Coliseum Commission v. National Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980). A threat of harm is not "imminent," if it is based upon remote possibilities or mere speculation. *Caribbean Marine Services Co. v. Baldridge*, 844 F.2d 668, 675 (9th Cir. 1988).

On January 20, 2005, Plaintiff was transferred from Idaho Maximum Security Institution (IMSI) to Idaho Correctional Center (ICC), a medium/minimum security facility. On January 25, 2005, Plaintiff was transferred to Southern Idaho Correctional Institution (SICI), a minimum security institution. There is no allegation of retaliation stemming from these transfers, which were positive moves for Plaintiff, giving him more freedom and privileges.

On January 27, 2005, while at SICI, Plaintiff was called to Defendant Elliott Weiss's office. Weiss told Plaintiff that the Parole Commission wanted to know if Plaintiff was willing to participate in one of the therapeutic community (TC) programs;

**ORDER  2**

Weiss also said that if Plaintiff wanted to do so, he would need to put aside his legal work or finish it up.[1]

Weiss then reminded Plaintiff that he was Plaintiff's case manager and asked Plaintiff if he would like to have a different case manager.  Plaintiff replied that he would like a different case manager.  As Weiss asked him this question, he held in his hand the memorandum Plaintiff needed Weiss to sign in order to be able to move ahead from the lowest level of inmate labor detail (orange - where one is placed upon transfer), to a higher level (blue).  Plaintiff asked Weiss if he could still sign the memo allowing him to move to blue, but Weiss refused, saying that Plaintiff needed to have the signature of his new case manager.

On the way back to his dorm, Plaintiff (a native American) saw his inmate brother-in-law (also a native American), who told Plaintiff to see if he could be placed on Counselor Christina Lewis's case list, because she was Native American, and had many Native American inmates on her case list.  Plaintiff then approached Lewis with this proposition.  In Plaintiff's own words, Lewis was "offended" by his approach, but said that she would accept Plaintiff and said that he should not "expect any special treatment or favors" from her.

Also on January 27, 2005, Plaintiff was moved to segregation and received a document stating that the reason for the move was "transit."  He also received a

---

[1]  Weiss's and the other Defendants' refusal to allow Plaintiff to participate in a TC program and simultaneously pursue his litigation is directly at issue in this lawsuit.

**ORDER  3**

disciplinary offense report (DOR) alleging that he had intimidated Lewis.  He was given an alternative sanction, 20 hours of extra duty, in lieu of proceeding with the DOR.  On February 7, 2005, as he was being released from segregation, he was intercepted by a correctional officer and returned to segregation.  He was told that he should have remained there until he was transferred instead of being released into SICI because the Warden did not want him at SICI.

Christina Lewis declares in her Affidavit that, on February 8, 2005, she reviewed Plaintiff's reclassification and programming.  *See Affidavit of Christina Lewis* (Docket No. 51).  She discovered that there was an error in classification, and that Plaintiff should have been reclassified as a medium security inmate, rather than a minimum security inmate.  She declares that her supervisor directed her to reclassify Plaintiff, and she did so, causing him to be moved from SICI to ICC.

A retaliation claim must allege the following: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).  The Court agrees with Plaintiff that there are some questionable discrepancies in this set of facts.  Defendants have not responded to Plaintiff's assertion that the Warden did not want him at SICI, but instead assert that his classification points did not allow him to remain at SICI.  Defendants' assertion that the February 8th recalculation of Plaintiff's classification does

**ORDER  4**

not explain why his restrictive housing order was marked "transit" on January 27th or why on February 7th, the correctional officer told Plaintiff that he must stay in segregation for "transfer."  The transit paperwork shows a date of February 8th.

It is unclear whether there is any causal connection between any of the foregoing actions and an exercise of Plaintiff's First Amendment rights.  Neither has Plaintiff shown that another transfer is imminent or that irreparable injury will occur if temporary relief is not granted.  Rather than require additional briefing and/or hold an evidentiary hearing on this temporary matter, the Court will simply accelerate the decision-making process on the dispositive motion currently pending before the Court because this case is close to a final resolution by summary judgment or by jury trial (if summary judgment is not granted).  The only factor now delaying the Court's resolution of this issue is Plaintiff's request for a lengthy period of time in which to respond to the pending motion for summary judgment.  Should Plaintiff be transferred to a higher-security prison in the absence of a legitimate penological reason in the future, he may renew his request for a temporary restraining order.

Finally, the Court will deny Plaintiff's request that it enter an order requiring a criminal investigation into Defendants' actions.  The Court has no jurisdiction to enter such an order.

## II.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

**ORDER  5**

A.    Plaintiff's Motion for Temporary Restraining Order (Docket No. 46-1) is MOOT, and Plaintiff's Motion for a Criminal Investigation (Docket No. 46-2) is DENIED.

B.    Plaintiff's Motion to Compel (Docket No. 47) is MOOT.  Plaintiff did not file a discovery request prior to filing this motion, and Defendants have agreed to respond to the Motion to Compel as if it were a discovery request.

C.    Plaintiff's Motion to Withdraw Pleading (Docket No. 48) is MOOT.  On February 15, 2005, the Court denied the Motion Plaintiff seeks to withdraw (see Docket No. 44).

D.    Plaintiff's Motion to Reschedule Deposition (Docket No. 53) is MOOT. Plaintiff's deposition has already been taken.

E.    Plaintiff's Motion for Extension of Time (Docket No. 57) is GRANTED. Plaintiff's Response to Defendants' Motion for Summary Judgment shall be due on or before **September 1, 2005**.

DATED:  **June 23, 2005**

B. LYNN WINMILL
Chief Judge
United States District Court

**ORDER  6**