IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TERRY C. ANDERSON, ) | |
| ) | Case No. CV04-104-S-BLW |
| Plaintiff, ) | |
| ) | **MEMORANDUM ORDER** |
| vs. ) | |
| ) | |
| JOHN HARDISON; ELLIOTT WEISS, BERT ) | |
| SCHWEICKART, MICHELE SLAY, TOM ) | |
| GILLESPIE, and GLORIA COUNSIL, ) | |
| individually and in their official capacities, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

Pending before the Court in this prisoner civil rights case is Defendants' Motion for Summary Judgment (Docket No. 55). Having reviewed the record in this case, and having considered the written arguments of the parties, the Court has determined that oral argument is unnecessary. Accordingly, the Court enters the following Order granting the Motion for Summary Judgment.

I.

MOTION FOR SUMMARY JUDGMENT

**A.     Standard of Law**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

**MEMORANDUM ORDER  1**

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In a motion for summary judgment, the moving party bears the "initial burden of identifying for the court those portions of the record which demonstrate the absence of any genuine issues of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986)).  If the moving party points to portions of the record demonstrating that there appears to be no genuine issue of material fact as to claims or defenses at issue, the burden of production shifts to the non-moving party.  To meet its burden of production, the non-moving party "may not rest upon the mere allegations contained in his complaint, but he must set forth, by affidavits, exhibits or otherwise, specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56; *see T.W. Electric Serv.*, 809 F.2d at 630 (internal citation omitted).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party.  All inferences that can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party.  *T.W. Elec. Serv.*, 809 F.2d at 630-31 (internal citation omitted).  The Court is required, however, to determine whether the evidence set forth meets the requirements of Rule 56(c) and (e).  In so doing, the Court is to look at admissibility of the *content* of the evidence, rather than the  admissibility of

**MEMORANDUM ORDER  2**

the *form* of the evidence.  *See Fonseca v. Sysco Food Service of Arizona*, 374 F.3d 840, 846 (9th Cir. 2004); *Block v. City of Los Angeles,* 253 F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56."); *Fed. Deposit Ins. Corp. v. New Hampshire Ins. Co.*, 953 F.2d 478, 485 (9th Cir. 1991) (same).  Declarations that contain hearsay are admissible for summary judgment purposes if they "could be presented in an admissible form at trial."  *Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003).

Rule 56(c) requires the Court to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  The existence of a scintilla of evidence in support of the non-moving party's position is insufficient.  Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson v. Liberty Lobby*, 477 U.S. at 252.

The Ninth Circuit has recently clarified that, in the context of a summary judgment motion, the district court must follow the analytical framework of Rule 56 when defendants asserting qualified immunity have challenged the truth of the facts alleged in the Complaint:

> [I]f a defendant moving for summary judgment has produced enough evidence to require the plaintiff to go beyond his or her pleadings, the plaintiff must counter by producing evidence of his or her own.  If in that circumstance the plaintiff fails to produce evidence, the district court is not required (or even allowed) to assume that the challenged factual allegations

**MEMORANDUM ORDER  3**

>
> in the plaintiff's complaint are true. Similarly, if in that circumstance the plaintiff produces evidence that is not enough, by itself, to create a genuine issue of material fact, the district court is not required (or even allowed) to assume the truth of challenged allegations in the complaint in order to supplement that evidence. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160-61 (1970); *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). If discovery has been curtailed by the district court because the defendant has asserted official immunity from suit, the district court may to some extent relax the evidentiary standards for the plaintiff in recognition of the restrictions on discovery, but the requirement that the plaintiff produce evidence nonetheless remains. *See DiMartini v. Ferrin*, 889 F.2d 922, 926-27 (9th Cir. 1989).

*Butler v. San Diego Dist. Attorney's Office*, 370 F.3d 956, 963 (9th Cir. 2004).

**B.    Facts**

Plaintiff is an inmate in the custody of the Idaho Department of Correction (IDOC), proceeding on First and Fourteenth Amendment claims that Defendants forced him to choose between pursuing his civil rights lawsuit and enrolling in a rehabilitative program he needed for parole eligibility. He stands convicted of possession of a controlled substance and has a sentence of two years fixed with three years indeterminate, with a full-term release date of May 27, 2007. *Affidavit of Mark Kubinski*, Exhibit B and C (Docket No. 56, Attachment #1); *Transcript of Deposition of Terry Anderson*, 13:12-14 (Docket No. 56, Attachment #1, Exhibit A).

At sentencing, the judge ordered Plaintiff to participate in an RSAT rehabilitative program offered through IDOC.[1] *Kubinski Affidavit*, Exhibit C. Plaintiff was told that he

---

[1] This particular type of "therapeutic community" rehabilitation program includes the RSAT, TEAM, and Life Line programs, but, for ease, the Court will refer to one and all of these

**MEMORANDUM ORDER  4**

had to be within nine months of his parole date to enter RSAT. *Transcript of Plaintiff's Deposition*, 79:7-17. The RSAT program lasts nine months. *Id*. Plaintiff was first eligible for parole in about May 2004. *Transcript of Plaintiff's Deposition*, 14:13-17.

On December 10, 2003, it was recommended that Petitioner take the programming required by the court order in order to eligible for upcoming parole. He received a report noting "lack of programming as recommended by court orders." *Transcript of Plaintiff's Deposition*, 30:10-25. It appears that Plaintiff was denied parole for lack of program attendance on December 4, 2004. *Id*. at 40:10-18.

In his own words, Plaintiff became aware that there may be a problem with his pursuit of his civil rights case and enrollment in RSAT before he requested placement in the RSAT program:

> Following my initial request for enrollment in the RSAT program, I learned through a fellow inmate who was at one time in the RSAT program, that my civil rights litigation may present a problem. To the best of his knowledge my civil rights litigation may hinder me from participating in the RSAT program. Based upon that information, in all correponden[ce] when applying for the RSAT program, I made it a point to address my civil rights litigation.

*Affidavit of Plaintiff*, at ¶ 20 (Docket No. 61-1, at p. 33).

Defendants would not allow Plaintiff to enroll in and complete the program at the same time he was pursuing a civil rights lawsuit. *Kubinski Affidavit*, Exhibits at pp. 34-35 (Docket No. 56, Attachment #1). Plaintiff filed a grievance on the issue. *See id.* As the final step in the grievance appeal system, Warden Ken Bennett wrote the following

---

programs as "RSAT."

**MEMORANDUM ORDER  5**

response to Plaintiff:

> DAR Elliott Weiss met with you and explained with you extensively that the T.E.A.M. and Life Line programs will require 100% of your attention. You have a choice[,] offender Anderson, you can choose to devote a 100% of your time to either of the programs above or you can devote 100% of your time to your law suit. No one is stating that you cannot pursue your lawsuit, but if you choose to attend T.E.A.M. or Life Line it cannot be your main focus.

*Id.*, at p. 35 (Docket No. 56).

Defendants filed a Motion for Summary Judgment asserting entitlement to qualified immunity. They argue that they did not tell Plaintiff that he could not pursue his civil rights lawsuit, but that he could not pursue it and attend the RSAT program at the same time. They assert that the RSAT is an intensive program where participants have very little time to do non-program tasks. Participants are asked to devote their full attention to the program. Defendants admit that they have allowed other inmates to continue to pursue their legal claims while participating in RSAT programs. *See Reply* (Docket No. 61).

**C.    Limitation of Plaintiff's Claims for Failure to Enroll in RSAT**

After he initiated this case, Plaintiff again requested an opportunity to enroll in the RSAT program. On December 22, 2004, Michele Slay, a former defendant in this case, told Plaintiff he could enroll in the program *and* have access to the courts, and she instructed him to apply to the program. *See Affidavit of Michele Slay* (Docket No. 56-1). Plaintiff refused to apply. *See id.* At that point, Plaintiff became responsible for his failure to enter a rehabilitation program required for parole eligibility. Therefore, Defendants' potential liability for Plaintiff's claims no longer existed as of December 22,

**MEMORANDUM ORDER  6**

2004, when he was notified that he could enter the program *and* pursue his lawsuits.

Plaintiff also states that he was accepted into the RSAT program on April 13, 2005, but he decided not to enroll because Michele Slay, director of the program, was "hostile" and he feared retaliation. *Affidavit of Plaintiff*, at ¶ 30 (Docket No. 61-1, at p. 37). However, Plaintiff did not suffer retaliation, but it was simply "his opinion" that future retaliation would occur. *Id*. Fear of future retaliation is not a viable civil rights claim and is not an adequate reason to refuse admission into the RSAT program. Again, as a result of Plaintiff's refusal to attend RSAT, no claims remain viable because no causal link between Defendants' acts and Plaintiff's alleged injuries exists.

**D.    Access to Courts Claim**

1. Discussion of Whether Plaintiff Has Stated a Claim

In its Initial Review Order, this Court preliminarily characterized Petitioner's first claim as a First Amendment access to courts claim falling under *Lewis v. Casey*, 518 U.S. 343, 354-55 (1996). In *Lewis v. Casey*, the United States Supreme Court determined that a prisoner's right to access the courts includes the right to have a "reasonably adequate opportunity" to challenge his conviction, sentence, or a condition of confinement. To prevail in such a case, the prisoner must show that prison officials' conduct resulted in an actual injury, that is, that his efforts to pursue a nonfrivolous legal claim were hindered. *Id*. at 351-53. Because Plaintiff chose not to enter the rehabilitative program, but to continue pursuing his legal action, no actual injury occurred. Therefore, no *Lewis v. Casey* type of claim lies.

**MEMORANDUM ORDER  7**

As the facts of this case have unfolded, it appears to the Court that, in this instance, the issue is not whether Plaintiff's right of access was "adequate, effective, and meaningful," *Bounds v. Smith*, 430 U.S. 817, 822(1977), but whether prison officials' implementation of a practice that inmates cannot attend rehabilitative programs required for parole eligibility while they are involved in a civil rights litigation unconstitutionally impinged on Plaintiff's exercise of his First Amendment right to access the courts. Therefore, the claim is more appropriately analyzed as to whether the policy or practice is unconstitutional under *Turner v. Safley*, 482 U.S. 78 (1987), rather than whether an "actual injury" occurred under *Lewis v. Casey*.

The standard of law governing First Amendment claims of inmates was outlined by the United States Supreme Court in *Turner*. There, the Court examined a free speech issue in the context of prison officials prohibiting correspondence between inmates residing at different state institutions. The *Turner* Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89. The Court identified four factors to consider when determining whether a regulation is valid: (1) whether there is a "rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether "there are alternative means of exercising the right that remain open to prison inmates"; (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether "ready alternatives" exist. 482 U.S. at 89-90.

**MEMORANDUM ORDER  8**

Defendants assert that it is lawful to make inmates choose among constitutional rights and other privileges in prison. They rely on *McKune v. Lile*, 536 U.S. 24 (2002), a plurality decision in which the Court determined that requiring an inmate to admit he committed a sex offense in order to obtain entrance into a rehabilitative program did not amount to coercion where the consequences of noncompliance were that the inmate would be reclassified to a higher security institution and lose privileges of a personal television and opportunities of access to prison programs, prison jobs, the gym, and the commissary. The justices in the plurality decision, and Justice O'Connor, who concurred in the judgment, disagreed as to the standard of law to be applied to determine what constitutes Fifth Amendment compulsion. *See Lile*, 536 U.S. at 48-49 (O'Connor, J., concurring).

In *Lile*, the Court focused on the test in *Sandin v. Conner*, 515 U.S. 472 (1995), and weighed whether inmates had a liberty interest in the privileges they lost as a result of their refusal to admit they were guilty of uncharged sex crimes, admission of such acts being a prerequisite to gaining entrance into the sex offender rehabilitation program. The plurality opinion determined: "A prison clinical rehabilitation program, which is acknowledged to bear a rational relation to a legitimate penological objective, does not violate the privilege against self-incrimination if the adverse consequences an inmate faces for not participating are related to the program objectives and do not constitute atypical and significant hardships in relation to the ordinary incidents of prison life." *Lile*, 536 U.S. at 38. The Court carefully noted that a prisoner's refusal to participate in the program did not "affect his eligibility for good-time credits or parole." *Id*. In *Lile*, the prisoner conceded, and the

**MEMORANDUM ORDER  9**

Court agreed, that the loss of television and other privileges that accompanied a higher inmate status level as opposed to the more restrictive conditions of a lower status level were not atypical and significant hardships and did not implicate a liberty interest. The Court very plainly noted that the essence of the case was whether "denial of discrete prison privileges for refusal to participate in a rehabilitation program amounts to unconstitutional compulsion" under the Fifth Amendment. *Id*. at 40.

Because *Lile* focused on the Fifth Amendment privilege against self-incrimination and expressly excluded circumstances in which parole eligibility would be affected by an inmate's choice to refuse to forgo his constitutional rights, this Court finds it inapplicable to Plaintiff's First Amendment claims. For example, it would not make sense to assert that prisoners should be given a choice as to whether they could practice their religion or attend a rehabilitation program that makes them parole-eligible, or whether they should be allowed to receive mail or attend such a rehabilitation program. *Cf. Lile*, 536 U.S. at 41. The analogy drawn to *Lile* simply does not fit the legal theory or facts of the case at hand.

A more fitting analogy appears to be the Ninth Circuit's reasoning in *Warsoldier v. Woodford*, 418 F.3d 989 (9th Cir. 2005), where a RLUIPA[2] claim was at issue. The RLUIPA test is similar to the *Turner* test, and the *Warsoldier* Court relied on past non-RUILPA First Amendment cases to support its decision:

> CDC [the prison] advances the argument, accepted by the district court, that because Warsoldier has not been physically forced to cut his hair,

---

[2] Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc, *et seq*.

**MEMORANDUM ORDER  10**

> his religious practice has not been restricted. According to CDC, even though he has been subjected to a variety of punishments for refusing to yield on his religious beliefs, Warsoldier is still "free to exercise his religion in all aspects." In other words, the grooming policy is not a substantial burden because Warsoldier may practice his religion – he will just be punished for doing so in an effort to compel him to acquiesce with the grooming policy in contravention of his religious beliefs. Such an argument flies in the face of Supreme Court and Ninth Circuit precedent that clearly holds that punishments to coerce a religious adherent to forgo her or his religious beliefs is an infringement on religious exercise. *See, e.g., Sherbert v. Verner*, 374 U.S. 398 (1963) (reasoning that forcing someone "to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand . . . puts the same kind of burden upon the free exercise of religion as would a fine imposed against appellant for her Saturday worship"); *May v. Baldwin*, 109 F.3d 557, 563 (9th Cir. 1997) (noting that 'putting substantial pressure on an adherent to modify his behavior and to violate his beliefs" infringes on the exercise of religion") [citation omitted]).
>
> Because the grooming policy intentionally puts significant pressure on inmates such as Warsoldier to abandon their religious beliefs by cutting their hair, CDC's grooming policy imposes a substantial burden on Warsoldier's religious practices.

*Id*. at 996.

The Court finds *Warsoldier*'s reasoning sufficiently analogous to Plaintiff's access to courts claim to support the use of *Turner v. Safely* rather than *Lewis v. Casey* as the appropriate standard of law to apply to Plaintiff's access to courts claim. Accordingly, Plaintiff need not show "actual injury," but has sufficiently stated facts alleging that the policy at issue impinges on his constitutional rights under *Turner*.

    2.    <u>Qualified Immunity Defense to the First Amendment Claim</u>

**MEMORANDUM ORDER 11**

Defendants assert entitlement to a qualified immunity defense.[3]  The Supreme Court has instructed that rulings on the qualified immunity defense "should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive," inasmuch as the defense is "an immunity from suit rather than a mere defense to liability."  *Saucier v. Katz*, 533 U.S. 194, 200 (2001).

In § 1983 actions, the doctrine of qualified immunity protects state officials from personal liability for on-the-job conduct so long as the conduct is objectively reasonable and does not violate an inmate's clearly-established federal rights.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). Contrarily, a state official may be held personally liable in a § 1983 action if he knew or should have known that he was violating a plaintiff's clearly-established federal rights.  *Id.*  True to its dual purposes of protecting state actors who act in good faith and redressing clear wrongs caused by state actors, the qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

The threshold question in considering application of the qualified immunity defense is whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [defendant's] conduct violated a constitutional right."  *Saucier v. Katz*, 533 U.S. at 201 (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)).  If, viewing the

---

[3]Qualified immunity is not applicable to claims for injunctive or declaratory relief.

**MEMORANDUM ORDER  12**

alleged injuries in a light most favorable to the plaintiff, the Court finds that a constitutional right appears to have been violated, it proceeds to the next step, which is to inquire whether the right was clearly established. *Id.*

To determine whether the right was clearly established, a court turns to Supreme Court and Ninth Circuit law existing at the time of the alleged act. *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996) (citation omitted). In the absence of binding precedent, the district courts should look to available decisions of other circuits and district courts to ascertain whether the law is clearly established. *Id.* (citation omitted).

The inquiry of whether a right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. at 201. For the law to be clearly established, "[t]he contours of the right" must be sufficiently clear that a reasonable official would understand that his conduct violates that right. *Anderson v. Creighton*, 483 U.S. 635 (1987). It is not necessary that the "very action in question has previously been held unlawful, . . . but it is to say that in the light of preexisting law the unlawfulness must be apparent" to the official. *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [defendant] that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. at 194-95 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).

Application of qualified immunity is appropriate where "the law did not put the [defendant] on notice that his conduct would be clearly unlawful. *Id.*, 533 U.S. at 195.

**MEMORANDUM ORDER  13**

However, if there is a genuine dispute as to the "facts and circumstances within an officer's knowledge," or "what the officer and claimant did or failed to do," summary judgment is inappropriate. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993). When a § 1983 defendant makes a properly supported motion for summary judgment based on immunity, the plaintiff has the obligation to produce evidence of his own; the district court cannot simply assume the truth of the challenged factual allegations in the complaint. *Butler v. San Diego District Attorney's Office*, 370 F.3d 956, 963 (9th Cir. 2004).

Taken in the light most favorable to Plaintiff, the facts alleged show that Defendants' conduct violated his First Amendment constitutional right to access the courts by implementing the policy that an inmate cannot attend a program mandatory for parole eligibility if he is involved in a civil rights litigation. That prisoners had the right to access the courts in prison conditions cases was clearly established at the time of the incidents in question. *See Ex parte Hull*, 312 U.S. 546 (1941); *Bounds v. Smith*, 430 U.S. 817 (1977); *Lewis v. Casey*, 518 U.S. 343(1996). That prison officials cannot impinge on a plaintiff's First Amendment rights absent a showing that the *Turner v. Safley* factors are met has been well-established law since 1987. Further, the right to exercise one's First Amendment rights without punishment has been clear for decades. *See Sherbert v. Verner*, 374 U.S. 398, 404 (1963) (reasoning that forcing someone "to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand .

**MEMORANDUM ORDER  14**

. . . puts the same kind of burden upon the free exercise of religion as would a fine imposed against appellant for her Saturday worship"); *May v. Baldwin*, 109 F.3d 557, 563 (9th Cir. 1997) (noting that "'putting substantial pressure on an adherent to modify his behavior and to violate his beliefs' infringes on the exercise of religion") (internal citation omitted).  Based upon the foregoing, Plaintiff's claim meets the first prong of the *Saucier* test.

The second prong of the test is whether the law was clearly established so that Defendants were placed on notice that their particular conduct was unlawful in the situation they confronted.  While each of the foregoing cases can be read together to show that Plaintiff's constitutional rights were violated, the law existing at the time of the violation did not make it apparent to Defendants that they were violating Plaintiff's constitutional rights when they asked him to choose between attending the RSAT program when he became eligible or delaying it until his lawsuit was completed.

In reaching its conclusion, the Court follows the reasoning in the qualified immunity analysis in *Serrano v. Francis*, 345 F.3d 1071 (9th Cir. 2003).  There, the Ninth Circuit Court held that, although the facts were particularly grievous, because there was no case law addressing the issue of the proper conditions of confinement for disabled individuals under a new theory of law asserted by Plaintiff, qualified immunity was proper.  *Id.* at 1082.  The court concluded: "Although we note that the prison failed miserably in providing adequate facilities for the disabled Serrano during his spell in solitary confinement, we cannot hold Francis liable for a constitutional violation, the

**MEMORANDUM ORDER  15**

contours of which had never before been fleshed out." *Id*.

Similar to the *Serrano* situation, Plaintiff's case lies at the intersection of several different issues that no court has collectively considered to produce a case that would serve as clear precedent for Defendants in this case.  As a result, Defendants are entitled to qualified immunity on Plaintiff's First Amendment access to courts claim insofar as he has requested monetary damages as a remedy.

### E.     Equal Protection Claim

The first task in analyzing Defendants' qualified immunity defense is to determine whether Plaintiff has stated facts showing that his equal protection rights could have been violated when Defendants allowed other inmates to attend RSAT and continue their litigation, but required Plaintiff to choose between continuing his lawsuit and attending RSAT  The record shows both that (1) at least one other inmate had difficulty with prison officials when he tried to pursue litigation and attend RSAT, see *Affidavit of Plaintiff*, at ¶ 20 (Docket No. 61-1, at p. 33), and that (2) other inmates were allowed to participate in RSAT, even though they were pursuing legal actions.  *See Affidavit of John Green* (Docket No. 61-1, Exhibit #3); *See Reply* (Docket No. 62).  Defendants argue that Plaintiff was not similarly situated to the other inmates who were allowed to pursue their suits; however, this does not foreclose a "class of one" equal protection claim or account for the other inmate who had difficulty pursuing litigation and entering RSAT.  Based upon Plaintiff's allegations, his equal protection claim meets the requirements of the first prong of the *Saucier* test.

**MEMORANDUM ORDER  16**

The Court therefore turns to the second prong, whether there is clearly established law giving Defendants fair warning that their actions could violate Plaintiff's equal protection rights. The principle of equal protection was well-established prior to Defendants' actions at issue. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ("[T]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents"). "In the prison context, . . . even fundamental rights such as the right to equal protection are judged by a standard of reasonableness – specifically, whether the actions of prison officials are 'reasonably related to legitimate penological interests.'" *Walker v. Gomez*, 370 F.3d 969, 974 (9th Cir. 2004) (quoting *Turner v. Safely*, 482 U.S. at 89).

In *Walker*, the Court granted Defendants qualified immunity on the second prong of *Saucier*, for reasons similar to those articulated in *Serrano*:

> Walker has not brought to our attention, and our independent research does not reveal, case law involving the particular circumstances presented by this case. The second prong of the *Saucier* inquiry operates at a high level of specificity. It is insufficient that the broad principle underlying a right is well-established. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct w 202. While it is well-established that racial discrimination in the assignment of prison jobs is unconstitutional, *cf. Black*, 824 F.2d at 562; *Foster v. Wyrick,* 823 F.2d 218, 220 (9th Cir. 1987), it has not been clearly established that such race-based differentiation is unconstitutional in the context of a prison-wide lockdown instituted in response to gang- or race-based violations. Defendants are entitled to qualified immunity.

*Id.* at 977-78.

**MEMORANDUM ORDER  17**

Plaintiff's case is similar to *Walker* because there is no governing case law regarding placement of inmates in rehabilitation programs where prison officials believe that the inmate's involvement in litigation would be detrimental to his success in a rehabilitative program that inmates need to complete in order to be eligible for parole. Because Defendant were not on notice that their actions violated Plaintiff's equal protection rights, they are entitled to qualified immunity.

### F.     Summary and Conclusion

As a result of the foregoing, the Court concludes that Defendants are entitled to qualified immunity on Plaintiff's First Amendment access to courts claim and Fourteenth Amendment equal protection claim.  Plaintiff's injunctive or declaratory relief claims are also subject to dismissal because Plaintiff is unable to show that Defendants' actions caused him to be unable to enroll in the RSAT program and pursue his legal cases after December 22, 2004, when Plaintiff was offered, but refused, an opportunity to enter the RSAT program *and* pursue his legal action.  As a result, Defendants' Motion for Summary Judgment (Docket No. 55) shall be granted in full.

## II.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (Docket No. 55) is  GRANTED.  Plaintiff's case is dismissed with prejudice.

**MEMORANDUM ORDER  18**

DATED: **December 1, 2005**

_____
B. LYNN WINMILL
Chief Judge
United States District Court

**MEMORANDUM ORDER  19**